WOLF, Appellant, vs. CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY, Respondent.

*May 6—June 3, 1924.*

*Railroads: "Depot grounds:" What constitute: Extent: Question
   for jury: Contributory negligence: Pedestrian crossing rail-
   road bridge.*

1. The extent of railroad depot grounds is in the first instance left
   largely to the judgment of the railroad itself; and while the
   grounds as laid out may be of such area that the court will
   say as a matter of law that they are reasonable or unreason-
   able in area or extent, the question whether the *locus in quo*
   of an accident is depot grounds is ordinarily one for the jury.
   p. 197.
2. A right of way between a bridge and a passenger depot 3,500
   feet from the bridge, on which there were many tracks used
   in making up trains, storing and switching cars, and for load-
   ing and unloading freight, is, as a matter of law, a part of the
   "depot grounds" within the meaning of sec. 192.48, Stats.
   1923, requiring every railroad company to fence its right of
   way excepting "depot grounds." p. 199.
3. A pedestrian who, while crossing a railroad bridge, was unable
   to clear the bridge on the approach of a fast-moving train
   and took a position on one of the timbers extending out from
   the bridge, but lost his balance and was struck by the train,
   was guilty of negligence. p. 199.

APPEAL from a judgment of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

The action is brought to recover damages for personal
injuries alleged to have been occasioned by reason of the
failure to fence the railway right of way, in violation of
the provisions of sec. 192.48, Stats. 1923.

Brittingham Park lies north of the shore line of Lake
Monona, in the city of Madison, and is intersected by the
right of way of the defendant company, which extends in a
southerly direction across said lake to what is known as
South Madison. A short distance from the northerly shore
of the lake there is a highway running in an easterly and
westerly direction, which crosses the tracks of the defend-

ant.    Connecting the shore with the right of way to the south the defendant maintains a bridge.    A short distance to the east of where said highway intersects the defendant's tracks there is a well-defined path leading from the highway onto the bridge, and the evidence is undisputed that, for a long time prior to the happening of the accident herein complained of, the public used this path as a means of getting onto the bridge and in traveling along the right of way of the defendant to South Madison.

The plaintiff, a young man about twenty-three years of age, while on his way from Madison to South Madison, on October 9, 1920, traveled along said highway in a westerly direction until he reached the path above referred to, and then proceeded along such path onto and over one half of said bridge, when he perceived a fast-moving passenger train approaching him from the south.    He immediately endeavored to retrace his steps, but, being unable to clear the bridge in time, took a position on one of the timbers extending out from the bridge in order to avoid a collision. While the train was passing, the plaintiff lost his balance and was struck by the train, which resulted in his receiving severe injuries.    The right of way of the defendant through Brittingham Park and to the north thereof at the time of the injury was not fenced.

Two questions were submitted to the jury on the subject of liability, and by the answer to the first question the jury found that the injuries sustained by the plaintiff were caused incidentally or indirectly by the fact that the railway company had not erected a fence along the side of its right of way; and second, that the plaintiff, after he saw the train approaching, did not evidence a reckless disregard of consequences and show that he did not care what results might happen to him.

On motion of the defendant the court ordered judgment, notwithstanding the verdict, in its favor, upon the ground that the place where the plaintiff entered defendant's right

Wolf v. Chicago, M. & St. P. R. Co. 184 Wis. 193.

of way, and to the north thereof, was a part of its depot grounds, and that under the statutes it was not obliged to erect and maintain a fence at such place. From the judgment entered pursuant to such order the plaintiff has prosecuted this appeal. Further facts will appear in the opinion.

For the appellant there was a brief by *Wehe & Landry,* attorneys, and *Walter D. Corrigan,* of counsel, all of Milwaukee, and oral argument by *Mr. Corrigan.*

For the respondent there was a brief by *H. J. Killilea* and *Rodger M. Trump,* both of Milwaukee, and *Sanborn, Blake & Aberg* of Madison, and oral argument by *Mr. Trump* and *Mr. John B. Sanborn.*

DOERFLER, J. The principal issue here involved consists of whether the right of way to the north of the bridge constituted depot grounds. At the northerly end of the bridge there was located a switch from which a sidetrack leads off from the main track in a northwesterly direction, and connected with numerous sidetracks, switching tracks, and loading tracks. Connected with these tracks are a number of industries that are served by the defendant and where cars are loaded and unloaded. The passenger depot of the defendant is located about 3,500 feet north of said bridge. Between the depot and the switch above referred to are a great number of tracks used by the defendant company in making up trains, storing cars, switching cars, and for loading and unloading freight. To the north of and between said bridge and the depot are located the defendant's scales, used in weighing freight and cars. The tracks above referred to are connected directly or indirectly with the tracks leading to these scales. The situation is graphically described by the court in its order for direction for judgment as follows:

"The proof establishes without controversy that the portion of the main track upon which the plaintiff entered on the day of the accident was used frequently for the purpose

of switching cars. A switch track leaves the main line practically at the western end of the trestle upon which plaintiff was at the time of injury. This switch is the only one leaving the main line for a distance of approximately 900 feet toward the depot. This switch furnishes the only means of access to those sidetracks leading from this switch track. It also furnishes the only means of access to the easterly end of four other switch tracks, which are so located so that they can be used either as team tracks for loading and unloading or for the storing of cars and the making up of trains. The only other means of access to these latter four switch tracks is that one may be reached by a crossover approximately 1,700 feet from the place where this switch leaves the main line near the place of accident, and that all of these four tracks can be reached from a place where they converge several hundred feet farther away from the point where this switch leaves the main line where plaintiff entered upon the right of way."

Sec. 192.48, Stats. 1923, formerly sec. 1810, provides as follows:

"(1) Every railroad corporation operating any railroad shall erect and maintain on both sides of any portion of its road (depot grounds excepted) good and sufficient fences of the height of not less than forty-eight·inches."

Plaintiff's counsel strenuously contend that the space between the highway above referred to and the bridge is part of the right of way of the defendant, along which it is required, under the statute, to maintain proper fences; that this portion of the right of way extends through the public park, which can under no circumstances be reasonably construed as depot grounds; that no portion of such territory so located in such park has ever been used for receiving or discharging passengers or for the loading or unloading of freight; that under the undisputed facts in the case the premises in question do not constitute depot grounds, and that therefore the plaintiff, having entered the right of way at a point where the defendant violated its alleged statutory

duty, and having received the injuries in the manner com-
plained of, and in view of the verdict of the jury, was clearly
entitled to judgment, and that the court erred in ordering
judgment for the defendant.

On the other hand, it is argued by defendant's counsel
that the right of way in question was laid out by the com-
pany as a part of its depot grounds—in fact that it is the
very commencement of such grounds; that from the point
where the switch is located a track leads to various indus-
tries, and is connected with other tracks used by the com-
pany in switching cars, making up trains, loading and un-
loading freight, and for other purposes incidental to the
maintenance of depot grounds generally; that depot grounds
are not confined solely to places where passengers are re-
ceived and discharged, or where freight is loaded or
unloaded, or where the public enter such grounds for pas-
senger or freight service, but that it includes the territory
on which its tracks are located and which are used directly
and incidentally for freight and passenger service.

The size of depot grounds depends in a large measure
upon their location, whether they are located in a large or
populous city, devoted mainly to commercial business or
industrial enterprises, or whether they are intended to serve
a small community of limited business and industrial capac-
ity. While 500 or 600 feet of depot grounds may be
adequate in a small city or village, a large city may require
a mile or more of grounds to meet the requirements of the
situation. What may constitute reasonable depot grounds
in one instance may, as a matter of law, be unreasonable in
another instance, and *vice versa*. It has therefore been held
that the extent of depot grounds, in the first instance, is to
a large extent left to the judgment of the company itself.
By this it must not be understood that the company has un-
limited power to lay out its depot grounds as it may deem fit
or proper. When the grounds are once laid out and used,

a situation may arise where it may be said as a matter of law that such grounds are unreasonable in their area or extent. On the other hand, such grounds also may be of such area that the court will say as a matter of law that they are reasonable. In *Mills & Le Clair L. Co. v. C., St. P., M. & O. R. Co.* 94 Wis. 336, 68 N. W. 996, it was held that, in the absence of evidence showing that depot grounds are unreasonable in extent, the grounds as they are established by the company will be deemed the true limits. In *Prince v. C. & N. W. R. Co.* 165 Wis. 212, 161 N. W. 765, it was held:

> "Ordinarily the question whether the *locus in quo* of an accident is depot grounds is for the jury. *McDonough v. M. & N. R. Co.* 73 Wis. 223, 40 N. W. 806; *Grosse v. C. & N. W. R. Co.* 91 Wis. 482, 65 N. W. 185; *Schwind v. C., M. & St. P. R. Co.* 140 Wis. 1, 121 N. W. 639. . . . The place where passengers get off and on trains, and where goods are loaded and unloaded, and all grounds necessary, convenient, and actually used for such purposes by the public and by the railway company, including the place where cars are switched and trains made up; also the place where tracks are used for storing cars, and where the public require open and free access to the railroad for the purposes of such business, constitute depot grounds."

Such is also the holding of this court in the case of *Mills & Le Clair L. Co. v. C., St. P., M. & O. R. Co.* 94 Wis. 336, 68 N. W. 996.

The question here involved, as will appear from the above citations and references, has frequently come before the court for consideration. We are firmly convinced that the construction placed upon the statute by the learned counsel for the plaintiff is too narrow to meet the practical situation as contemplated by the legislature, and this court has so held in numerous decisions. Large trains of cars are frequently diverted at the switch in question from the main track onto the sidetrack leading from this switch, and from

Wolf v. Chicago, M. & St. P. R. Co. 184 Wis. 193.

thence to the industries along this track and connecting tracks. Trains are broken up and part of the cars are hauled to loading tracks, and, by means of switches, onto other tracks. The yard enlarges toward the north in fan-shape, and the number of tracks increases all the way up to the passenger depot, so that it can truly be said that the switch in question and the place where the plaintiff entered the defendant's right of way constituted the beginning of the depot grounds of the defendant. In the movement of large trains from this switch it frequently becomes necessary for trainmen to alight from the cars in order to give signals. To do this, a proper regard for the safety of railroad employees requires that the railway in Brittingham Park, in the vicinity of the highway in question, be not fenced. The main object of sec. 192.48 is to protect and conserve human life. So that we are constrained to the view that the decision of the lower court, holding the right of way in question at the place where the plaintiff entered upon the same is a part of the defendant's depot grounds as a matter of law, is correct and in harmony with the prior decisions of this court. The plaintiff, therefore, at the time of the injury was guilty of contributory negligence, which precluded his right of recovery.

*By the Court.*—Judgment affirmed.